## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANTEL HAMMOND, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br> v.<br><br>RENAISSANCE ENTERTAINMENT PRODUCTIONS, INC.,<br><br>       Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Chantel Hammond brings this action on behalf of herself, and all others similarly situated against Renaissance Entertainment Productions, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. For over two years, Defendant has been nickel and diming visitors of its New York Renaissance Faire entertainment facility on its website in violation of the New York Arts and Cultural Affairs Law § 25.07(4). Whenever a consumer selects an admission ticket on the website https://renfair.com/ny/, she is quoted a fee-less price, only to be ambushed by a non-delineated "Service Fee" and "Order Fee" at checkout after clicking through the various screens required to make a purchase – all while a clock is ticking down for the consumer to complete the transaction. Because New York is a busy place, and because these fees are only flashed *after* a consumer selects her ticket, Defendant can plausibly put its customers on a shot clock and tell

them they need to decide quick, because Defendant cannot hold their spots open forever.  This cheap trick has enabled Defendant to swindle substantial sums of money from their customers.

2.      To stop this hustle, New York passed Arts and Cultural Affairs Law § 25.07(4), which provides that "every operator … of a place of entertainment … shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket." "Such disclosure of the total cost and fees shall be displayed in the ticket listing *prior to* the ticket being selected for purchase."  *Id.* (emphasis added).  And "[t]he price of the ticket shall not increase during the purchase process."  *Id.*  Additionally, "[d]isclosures of subtotals, fees, charges, and any other component of the total price shall not be false or misleading, and may not be presented more prominently or in the same or larger size as the total price."  *Id.*  This latest version of the law went into effect August 29, 2022.  *See* Exhibit A.

3.      For these reasons, Plaintiff seeks relief in this action individually, and on behalf of all other ticket purchasers for Defendant's place of entertainment, New York Renaissance Faire, for statutory and/or actual damages, reasonable attorneys' costs and fees, and injunctive relief under New York Arts and Cultural Affairs Law § 25.33.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.  Defendant sold at least 100,000 tickets to its place of entertainment through its website during the applicable class period, and is liable for a minimum of fifty dollars in statutory damages for each ticket sold.  There is minimum diversity under 28 U.S.C. § 1332(d) because many class members who visit Defendant's place of

entertainment come from other states.  Indeed, the New York Renaissance Faire sits near the intersection of New York, New Jersey, and Pennsylvania, and is the only Renaissance Faire within a hundred-mile radius.  Additionally, Defendant is a corporation from the State of Colorado, and Plaintiff is a resident of New Jersey.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the New York Renaissance Faire is located in this District and therefore a substantial part of the events or omissions giving rise to the claim occurred in this District.

6.     This Court has personal jurisdiction over Defendant because Defendant operates a place of entertainment, the New York Renaissance Faire, in this District and sells tickets to visit its place of entertainment through its website.

**PARTIES**

7.     Plaintiff Chantel Hammond is an individual consumer who, at all times material hereto, was a citizen and resident of South Orange, New Jersey.  Plaintiff purchased two admission tickets to the New York Renaissance Faire on or about September 1, 2023 through Defendant's website, https://renfair.com/ny/.  The transaction flow process she viewed on Defendant's website was substantially similar to that as depicted in Figures 1 through 7 in this Complaint.

8.     Defendant Renaissance Entertainment Productions, Inc. is a Colorado limited liability company with its principal place of business in Louisville, Colorado.  Defendant owns and operates the New York Renaissance Faire in Tuxedo, New York, and its website, https://renfair.com/ny/.

**RELEVANT FACTUAL ALLEGATIONS**

9.    When a person visits Defendant's website, https://renfair.com/ny/, on the main page, she can click the "Buy Tickets" button to select admission tickets to visit Defendant's place of entertainment, the New York Renaissance Faire.   *See* Figure 1.



**Figure 1**

10.    After a consumer selects the "Buy Tickets" button, she is taken to a screen which lists the prices of tickets.  *See* Figure 2, next page.  Here, the New York Renaissance Faire advertises its tickets as "Adult tickets - $48," "Child(5-12) - $20," "Child(0-4) – FREE," and "Senior(62)/Military - $43."  *Id.*  On this same page, the consumer is offered a calendar with a list of eligible dates from which to select her tickets to the Faire.  *Id.*  The consumer may also select the "BUY Tickets Now" button, which ultimately brings her to the same calendar to select a date.  *Id.*  On the bottom of the screen, the New York Renaissance Faire again affirms, in bid, bold, red lettering, that its tickets are priced as "Adults $48 – Children $20."  *Id.*  However, these are not the true prices of tickets to the New York Renaissance Faire.



**Figure 2**

11.    After a consumer clicks on one of the dates, the consumer is presented a pop-up allowing her to select the type of admission ticket she wishes to purchase.  *See* Figure 3, next page.  At this point, the price of the ticket has increased, in violation of New York Arts & Cultural Affairs Law § 25.07(4).  *Id.*  Instead of $48.00 for an adult ticket, an adult ticket now costs $51.32 because of the addition of a "$3.32 Service Fee."  *Id.*



**Figure 3**

12.    After the consumer selects the "Add" button for the type of ticket she wishes to purchase, she may click "Proceed to Checkout."  *See* Figure 4, next page.

6



**Figure 4**

13.     Once the consumer clicks "Proceed to Checkout" button, a new screen appears, displaying her "Cart Summary," asking her to input her personal information, and asking her to select her ticket delivery option.  *See* Figure 5, next page.  However, by this point, the total cost of the ticket has increased yet again with the addition of an "Order Fee" of $1.50.  *Id.*  The consumer must now pay $57.05 for a ticket that originally cost $48.  *Id.*  And to make matters worse, the consumer is put on a countdown timer, forcing her to review her order, input her information, and make her decisions quickly, otherwise she will lose her selected ticket.  *Id.*

7

Only on this page is the consumer finally displayed the total cost of the ticket, inclusive of all ancillary fees.  *Id.*



**Figure 5**

14.     After the consumer inputs her information and selects her delivery method, she can click "Continue" at the bottom of the page.  *See* Figure 6, next page.



**Figure 6**

15.    Once the consumer clicks "Continue," she is taken to the payment screen, where she is asked to input her payment information, select insurance, and agree to terms. *See* Figure 7, next page.



**Figure 7**

16.     Finally, the consumer may select the "Complete Order" button to purchase her selected tickets.  *See* Figure 8, next page.



**Figure 8**

17.    Defendant initially charges $48 per adult ticket, but by the time the consumer reached the final checkout screen to pay, the cost is increased with the addition of a $1.35 Service Fee, a $1.97 Processing Fee, and a $1.50 Order Fee.  With a countdown timer and multiple decisions to make on this screen, consumers are unlikely to notice Defendant's sneaky fees.

## NEW YORK ARTS & CULTURAL AFFAIRS LAW

18.    Effective August 29, 2022, New York enacted Arts & Cultural Affairs Law § 25.07(4), which provides that "[e]very operator or operator's agent of a place of entertainment… shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a <u>service charge</u>, or any other fee or surcharge to the purchaser.  Such <u>disclosure</u> of the <u>total cost</u> and fees shall be displayed in the ticket listing <u>prior to</u> the ticket being <u>selected for purchase</u>." *Id*. (emphasis added).  And "[t]he price of the ticket

11

shall not increase during the purchase process." *Id.* Additionally, "[d]isclosures of subtotals, fees, charges, and any other component of the total price shall not be false or misleading, and may not be presented more prominently or in the same or larger size as the total price." *Id.* (emphasis added); *compare with* Figures 3 to 8.

19.    Shortly after the law was enacted, ticketing websites peppered the State of New York's Division of Licensing Services with questions about the scope of the law.  As explained by the Division of Licensing Services, "the ticket purchasing process begins once a consumer visits a ticket marketplace and first sees a list of seat prices."  *See* N.Y. Dep't of State, Div. Licens. Servs., *Request for Additional Guidance – New York State Senate Bill S.9461*, attached hereto as **Exhibit A**, at 1.  "From the moment the prospective purchaser assesses the [] ticket lists through the final payment … there should be no price increases to the purchaser for the ticket itself."  *Id.*  "When a prospective purchaser selects a ticket with full disclosure of the ticket price, the purchaser should not then have to search for the total price of the ticket as the purchaser proceeds through the purchasing process, it should continue to be readily available to the purchaser."  *Id*. at 2 (emphasis added).  "In short, the ticket listing must include the total cost of the ticket, with a breakdown of all service charges, fees and surcharges, that the purchaser must pay just to purchase the ticket."  *Id.* (emphasis added).

## CLASS REPRESENTATION ALLEGATIONS

20.    Plaintiff seeks to represent a class defined as all individuals in the United States who purchased tickets to the New York Renaissance Faire from Defendant's website on or after August 29, 2022 (the "Class").  Excluded from the Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

21.     Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class are at least in the thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

22.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to: (a) whether Defendant failed to disclose the total cost of the ticket, including all ancillary fees, prior to the tickets being selected for purchase in violation of New York Arts & Cultural Affairs Law § 25.07(4); (b) whether the displayed price of Defendant's tickets increases during the purchase process in violation of New York Arts & Cultural Affairs Law § 25.07(4); (c) whether Defendant failed to disclose its online service fee in a clear and conspicuous manner in violation of New York Arts & Cultural Affairs Law § 25.07(4); and (d) whether Defendant displayed the subtotal more prominently than the total price in violation of New York Arts & Cultural Affairs Law § 25.07(4).

23.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to disclose the total cost of its tickets, including Defendant's online service fees, throughout the online ticket purchase process.

24.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this

action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

25.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## FIRST CAUSE OF ACTION
### New York Arts & Cultural Affairs Law § 25.07
### (On Behalf Of The Class)

26.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

27.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

28.     Defendant is an "operator… of a place of entertainment" because Defendant operates the New York Renaissance Faire, which is a "place of entertainment."  "'Place of entertainment' means any privately or publicly owned and operated entertainment facility such as a theatre, stadium, arena, racetrack, museum, amusement park, or other place where

14

performances, concerts, exhibits, athletic games or contests are held for which an entry fee is charged." N.Y. Arts & Cult. Aff. Law § 25.03(6) (emphasis added). In particular, Defendant operates an interactive and immersive experience where guests can watch jousting tournaments, eat and drink medieval cuisine, compete in games, listen to music, and tour the makeshift 16th Century English village.

29.     Defendant violated New York Arts & Cultural Affairs Law § 25.07(4) by failing to disclose the "total cost of a ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket" after a ticket is selected, as depicted in Figures 2 through 8 of this Complaint.

30.     Defendant also violated New York Arts & Cultural Affairs Law § 25.07(4) by increasing the total cost of its tickets during the purchase process, as depicted in Figures 2 through 8 of this Complaint.

31.     The Service Fee, Processing Fee, and Order Fee are "ancillary fees that must be paid in order to purchase the ticket." N.Y. Arts & Cult. Aff. Law § 25.07(4).

32.     On or about September 1, 2023, Plaintiff purchased two tickets to the New York Renaissance Faire from Defendant's website and was forced to pay Defendant's ancillary fees. Plaintiff was harmed by paying these ancillary fees because the total cost was not disclosed to Plaintiff at the beginning of the purchase process, and therefore, is unlawful pursuant to New York Arts & Cultural Affairs Law § 25.07(4).

33.     Plaintiff was also harmed by not having the total cost of her tickets disclosed upfront at the start of the purchase process. By not knowing the total cost of her tickets before Plaintiff selected her tickets for purchase from Defendant, Plaintiff could not shop around for tickets to comparable events. As such, Plaintiff had no way of knowing whether she was getting

the best deal her money could buy.  By hiding its fees, Defendant was able to reduce price
competition and cause consumer harm to individuals like Plaintiff.

34.     At the time Plaintiff purchased her tickets, she was not aware that Defendant's
fees were unlawful under the New York Arts & Cultural Affairs Law.  She was not browsing
websites in search of legal violations.  Instead, Plaintiff was browsing Defendant's website
because she sincerely intended to purchase tickets, and she did, in fact, purchase those tickets.

35.     On behalf of herself and members of the Class, Plaintiff seeks to enjoin the
unlawful acts and practices described herein, to recover her statutory and/or actual damages and
reasonable attorneys' fees.  *See* N.Y. Arts & Cult. Aff. Law § 25.33.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Class prays
for judgment as follows:

(a)     For an order certifying the Class under Rule 23 of the Federal Rules of Civil
Procedure and naming Plaintiff as representative of the Class and Plaintiff's
attorneys as Class Counsel to represent the Class;

(b)     For an order declaring that Defendant's conduct violates the statutes referenced
herein;

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted
herein;

(d)     For compensatory and statutory damages in amounts to be determined by the
Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and

expenses and costs of suit.

Dated: April 3, 2025                          Respectfully submitted,

                                             **BURSOR & FISHER, P.A**.

                                             By:    */s/ Philip L. Fraietta*
                                                     Philip L. Fraietta

                                             Philip L. Fraietta
                                             Eleanor R. Grasso
                                             1330 Avenue of the Americas
                                             32nd Floor
                                             New York, NY 10019
                                             Telephone: (646) 837-7150
                                             Facsimile: (212) 989-9163
                                             Email: pfraietta@bursor.com
                                                     egrasso@bursor.com

                                             *Attorneys for Plaintiff*

**EXHIBIT A**

**DIVISION OF LICENSING SERVICES**
STATE OF NEW YORK
**DEPARTMENT OF STATE**
ONE COMMERCE PLAZA
99 WASHINGTON AVENUE
P.O. BOX 22001
ALBANY, NY 12201-2001
TELEPHONE: (518) 474-4429
HTTPS://DOS.NY.GOV

KATHY HOCHUL
GOVERNOR

ROBERT J. RODRIGUEZ
SECRETARY OF STATE

October 24, 2022

Via email only

███████████████
███████████████
███████████

Re:    Request for Additional Guidance – New York State Senate Bill S.9461
       (now L 2022, ch. 358, eff. June 30, 2022)

Dear ████████████,

Please accept the following reply on behalf of the New York State Department of State (the "Department") regarding your letter dated October 3, 2022.  In your letter, you requested additional guidance from the Department about the changes, recently adopted, to the New York State Arts and Cultural Affairs ("ACA") law relating to ticket resellers, by submitting several questions with potential scenarios.

Ticket resellers, including platforms that facilitate the sale or resale of tickets are regulated by Article 25 of the ACA, which was amended effective June 30, 2022, by L 2022, ch 358 (previously A.10500/S.9461).  The amendments to the Article incorporated "recommendations from a…legislative investigation into the state's live event ticket industry due to concerns about potentially unfair, deceptive, and anti-consumer practices occurring in the primary and secondary markets." (S.9461 Sponsor's Memo).  Most of the amendments were to take effect on the sixtieth day after becoming law, which has already occurred, and thus "[e]very operator or operator's agent of a place of entertainment, any licensee or other ticket reseller, or platform that facilitates the sale or resale of tickets…" should now be in compliance with the amended law. ACA §§ 25.03, 25.07(4)

Your questions are noted below, as follows:

(1) Does the ticket purchasing process begin once a consumer visits a ticket marketplace and first sees a list of seat prices?
    a. As to be explained below, it is the Department's opinion that this question should be answered in the affirmative.
(2) Can a ticket marketplace display a ticket price that changes from the first time the customer sees the price to when the customer selects the ticket for purchase?
    a. As to be explained below, it is the Department's opinion that this question should be answered in the negative.



(3) In addition to changing a ticket price during the purchase process, can a ticket marketplace obscure the second showing of a price such that the consumer has to scroll down to see the price?

    a. As to be explained below, it is the Department's opinion that this question should be answered in the negative.

(4) Can a ticket marketplace assess 'service and delivery fees' after selecting them and entering in payment information?

    a. As to be explained below, it is the Department's opinion that this question should be answered in the negative.

The requirements that must be met in the ticket purchasing process, as described in Article 25 of the ACA, as amended, begin the moment a prospective purchaser visits a ticket seller/reseller or other platform selling or reselling tickets (collectively, "reseller"), and such prospective purchaser first views the listings of the seats/tickets.  Under ACA § 25.07(4), as amended, resellers are obligated to "disclose the total cost of the ticket inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose…the portion of the ticket price…that represents a service charge, or any other fee or surcharge…displayed in the ticket listing ***prior to the ticket being selected*** for purchase." (emphasis added). In short, the ticket listing must include the total cost of the ticket, with a breakdown of all service charges, fees and surcharges, that the purchaser must pay just to purchase the ticket, by itself (not including delivery or other optional charges).

In addition, the language in ACA § 25.07(4), as amended, is clear and specific that the price of a ticket "***shall not increase during the purchase process***…". (emphasis added). Expressly excluded however are "reasonable fees for delivery of non-electronic tickets…". <u>Id</u>. From the moment the prospective purchaser accesses the reseller's ticket lists through the final payment, with the exception of delivery fees and service charges for other optional "special services", if any, permitted under ACA § 25.29(1)(a), there should be no price increases to the purchaser for the ticket itself.  When a prospective purchaser selects a ticket with full disclosure of the ticket price, the purchaser should not then have to search for the total price of the ticket as the purchaser proceeds through the purchasing process, it should continue to be readily available to the purchaser.

Under ACA § 25.07(4), as amended, *all service charges, fees and surcharges* to the prospective purchaser must be *disclosed* in the ticket listing ***prior to the ticket being selected for purchase***, and the portion of the ticket price that represents a service charge, or any other fee or surcharge, must be disclosed in a clear and conspicuous manner.  Disclosure of delivery fees for non-electronic tickets, is set forth in ACA §§ 25.07(4) and 25.29(2), as amended.  ACA §§ 25.07(4) and 25.29(2) provide that "a ***reasonable and actual cost for delivery"*** of non-electronic tickets based on the delivery method selected by the purchaser shall be disclosed "***prior to accepting payment***…***".*** (emphasis added). There is no delivery charge allowed for tickets delivered electronically or for tickets that may be printed independently by the purchaser. ACA § 25.29(2).

Notably, ACA §25.29(1)(a) was not amended and allows a reseller to charge reasonable service charges for "special services."  Delivery is specifically delineated as a "special service", even though delivery and delivery charges are now addressed more specifically in the law.  Most of the described special services appear to be able to be included in the total ticket price at the beginning of the purchase

process, at least in the case of online platforms, as they are not usually optional.  However, optional "ticket protection" insurance appears to fall within the category of "special services", even though not specifically referenced.  Obviously, such "special service" would not be disclosed as part of the ticket price at the outset since it is an optional special service.  This coincides with how service charges, surcharges, fees, and delivery options and charges are handled under the law.  The amendments emphasize candid and non-misleading disclosure.  Due to this emphasis, including delivery costs delineated as a special service required to be disclosed prior to the acceptance of any payment, it appears that charges for other optional "special services" allowed under ACA §25.29(1)(a), not already included in the ticket price, must also be disclosed prior to accepting payment.  If a ticket purchaser opts to purchase insurance, the costs of such special services would have to be disclosed *before* accepting payment and should certainly be disclosed prior to purchaser providing payment information at the end of the transaction.

Where an online purchaser is nearing the end of the purchasing process, after selecting the tickets, the final total price should only include the fully disclosed ticket price (including the disclosed breakdown of service charges, fees and surcharges), the fully disclosed reasonable and actual delivery charges, if any, and the fully disclosed reasonable charges for other optional special services, such as ticket insurance, if any, prior to the purchaser providing any payment information.

I hope this information has been helpful to you.  Please feel free to contact the Department with any additional questions or concerns.

Respectfully,

/s/

████████

Senior Attorney, Division of Licensing Services
New York State Department of State
████████

cc:
████████
████████